Joshua W. Denbeaux, Esq.
**Denbeaux & Denbeaux**
372 Kinderkamack Road
Suite 5
Westwood, NJ  07675
(201) 664-8855
(201) 666-8589 (fax)

R. Bradford Fawley, Esq. (*pro hac vice application to be filed*)
**FAWLEY PLLC**
680 E. Main Street #596
Stamford, Connecticut  06901
(802) 380-4735 (phone)

*Attorneys for Defendants and Counterclaim Plaintiffs Peter Aytug, Areopi Stathatos, 83 Bostwick LLC, 132 Wilkinson Avenue LLC, 137 Wilkinson Avenue LLC and 286-288 Forest Street LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PS FUNDING, INC.,<br><br>Plaintiff,<br><br>v.<br><br>83 BOSTWICK LLC, 132 WILKINSON AVENUE LLC, 137 WILKINSON AVENUE LLC, 286-288 FOREST STREET LLC, PETER AYTUG, AREOPI STATHATOS, JOHN DOE 1-10 AND JANE DOE 1-10 and THE STATE OF NEW JERSEY<br><br>Defendants. | No.:  2:21-cv-17660-SRC-ESK<br><br>**DEFENDANTS AND COUNTERCLAIM PLAINTIFFS PETER AYTUG, AREOPI STATHATOS, 83 BOSTWICK LLC, 132 WILKINSON AVENUE LLC, 137 WILKINSON AVENUE LLC AND 286-288 FOREST STREET LLC ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT AND COUNTERCLAIMS** |

## ANSWER OF DEFENDANTS PETER AYTUG, AREOPI STATHATOS, 83 BOSTWICK LLC, 132 WILKINSON AVENUE LLC, 137 WILKINSON AVENUE LLC AND 286-288 FOREST STREET LLC TO PLAINTIFF'S COMPLAINT

Defendants Peter Aytug, Areopi Stathatos, 83 Bostwick LLC, 132 Wilkinson Avenue

LLC, 137 Wilkinson Avenue LLC and 286-288 Forest Street LLC (collectively "Defendants")

hereby answer the Plaintiff's allegations in their Complaint.

1. Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Denied.

8. Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

9. Admitted.

10. Admitted.

11. Defendants admit the existence of the Note but deny that paragraph 11 completely and properly state the Note's provisions, terms and conditions which speak for themselves.

12. Admitted.

13. Admitted.

14. Admitted.

15. Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 15.

16. Defendants deny that paragraph 16 properly and completely states the provisions, terms and conditions of the "Loan Documents" which speak for themselves.

17. Defendants deny that paragraph 17 properly and completely states the provisions, terms and conditions of the "Loan Documents" which speak for themselves.

18. Defendants deny that paragraph 18 properly and completely states the provisions, terms and conditions of the "Loan Documents" which speak for themselves.

19. Defendants deny that paragraph 19 properly and completely states the provisions, terms and conditions of the "Loan Documents" which speak for themselves.

20. Defendants deny that paragraph 20 properly and completely states the provisions, terms and conditions of the "Loan Documents" which speak for themselves.

21. Defendants admit that they entered into the "Modification" but deny that paragraph 21 properly and completely states the provisions, terms and conditions of the "Loan Modification Agreement" which speaks for itself.

22. Denied.

23. Defendants admit they received a copy of "Exhibit H" but deny the remaining allegations of paragraph 23.

24. Denied.

25. Defendants do not respond to any "ask" stated in paragraph 25 because they do not allege facts to which a response is required.  Otherwise, the allegations of paragraph 25 are denied.

26. Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 26.

27. Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 27.

28. Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 28.

29. Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 29.

30. Denied.

31. Admitted that the "Mortgaged Property" is commercial in nature and was never occupied by the "Borrower" as a personal residence. The remaining allegations of paragraph 31 assert conclusions of law to which no response is required and, thus, are denied.

32. Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 32.

33. Defendants repeat and incorporate herein their responses to the allegations in paragraphs 1 through 32 to the allegations of paragraph 33.

34. Denied.

35. Defendants deny that the "terms contained in the Loan Documents" entitle Plaintiff to the relief it claims to "elect" and lack information sufficient to form a belief as to the truth of the Plaintiff's "election" stated in Paragraph 35.

36. Denied.

37. Defendants repeat and incorporate herein their responses to the allegations in paragraphs 1 through 36 to the allegations of paragraph 37.

38. Denied.

39. Defendants admit that "Borrowers" are in possession of the properties. The remaining allegations of paragraph 39 are denied.

40. Defendants repeat and incorporate herein their responses to the allegations in paragraphs 1 through 39 to the allegations of paragraph 40.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

## DEFENDANTS' AFFIRMATIVE DEFENSES TO THE PLAINTIFF'S COMPLAINT

1. Accord and Satisfaction.  The parties reached an accommodation by settlement of the dispute.  In sum, and further described in the Counterclaims and preamble to same, Plaintiff agreed not to pursue foreclosure so long as Defendants presented payment of principal plus a small amount of additional interest.  Defendants complied, Plaintiff rejected but is bound by the Accord and Satisfaction.

2. Estoppel.  The parties reached an accommodation by settlement of the dispute.  In sum, and further described in the Counterclaims and preamble to same, Plaintiff agreed not to pursue foreclosure so long as Defendants presented payment of principal plus a small amount of additional interest.  Defendants complied, Plaintiff rejected but is estopped from refusing tender and estopped from continuing this litigation.

3. Failure to Mitigate Damages. The parties reached an accommodation by settlement of the dispute.  In sum, and further described in the Counterclaims and preamble to same, Plaintiff agreed not to pursue foreclosure so long as Defendants presented payment of principal plus a small amount of additional interest.  Plaintiff is not entitled to anything beyond its settlement agreement amount, and any further so-called damages are being created by Plaintiff through its fraudulent settlement negotiations and breach of the settlement agreement.

4. Failure to State a Claim.

5. Fraud.  The parties reached an accommodation by settlement of the dispute.  In sum, and further described in the Counterclaims and preamble to same, Plaintiff agreed not to

pursue foreclosure so long as Defendants presented payment of principal plus a small amount of additional interest.  Plaintiff is not entitled to anything beyond its settlement agreement amount, and any further so-called damages are being created by Plaintiff through its fraudulent settlement negotiations and breach of the settlement agreement.

6. Release.

7. Setoff.

8. Unclean Hands. The parties reached an accommodation by settlement of the dispute.  In sum, and further described in the Counterclaims and preamble to same, Plaintiff agreed not to pursue foreclosure so long as Defendants presented payment of principal plus a small amount of additional interest.  Plaintiff is not entitled to anything beyond its settlement agreement amount, and any further so-called damages are being created by Plaintiff through its fraudulent settlement negotiations and breach of the settlement agreement.

9. Waiver.

10. Failure to Join Indispensable Party. John and Jane Doe I-X in the Caption of the action represent entities with interest in the mortgage loan in dispute, including but not limited to the PS Funding 'investor' whose existence was disclosed by PS Funding during discussions and negotiations that led to the settlement agreement that PS Funding has tortiously breached by this secret filed complaint.

## **DEFENDANTS' COUNTERCLAIMS AGAINST PLAINTIFF**

Defendants and Counterclaim Plaintiffs Peter Aytug ("Aytug"), Areopi Stathatos ("Stathatos"), 83 Bostwick LLC ("Bostwick"), 132 Wilkinson Avenue LLC ("132 Wilkinson"), 137 Wilkinson Avenue LLC ("137 Wilkinson") and 286-288 Forest Street LLC ("Forest Street") (all collectively "Counterclaim Plaintiffs") hereby Counterclaim against the Plaintiff/Counterclaim Defendant PS Funding, Inc. ("PS" or "PS Funding") and allege and state:

## I.  THE PARTIES.

1. Counterclaim Plaintiff, Aytug is an individual living and residing in the State of New York and is a manager of Wilkinson-Bostwick Partners, LLC ("Wilkinson-Bostwick") which is the sole member of Bostwick, 132 Wilkinson, 137 Wilkinson and Forest Street.

2. Counterclaim Plaintiff, Stathatos is an individual living and residing in the State of New York and is a manager of Wilkinson-Bostwick.

3. Counterclaim Plaintiff, Bostwick is a New Jersey limited liability company with an address located at 37-18 Northern Boulevard, Suite 417, Long Island City, NY 11101.

4. Counterclaim Plaintiff, 132 Wilkinson is a New Jersey limited liability company with an address located at 37-18 Northern Boulevard, Suite 417, Long Island City, NY 11101.

5. Counterclaim Plaintiff, 137 Wilkinson is a New Jersey limited liability company with an address located at 37-18 Northern Boulevard, Suite 417, Long Island City, NY 11101.

6. Counterclaim Plaintiff, Forest Street is a New Jersey limited liability company with an address located at 37-18 Northern Boulevard, Suite 417, Long Island City, NY 11101.

7. On information and belief, Counterclaim Defendant PS is a corporation organized and existing under the laws of the State of Delaware, having an office at 2121 Park Place, Suite 250, El Segundo, CA 90245.

## II.      SUBJECT MATTER AND PERSONAL JURISDICTION, AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) as this action is between parties that are of diverse citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9.     This Court has personal jurisdiction over PS Funding in this action, and venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c), because (a) PS Funding has engaged in business within this forum amounting to sufficient minimum contacts, including suing Counterclaim Plaintiffs in this forum; (b) PS Funding has performed acts within or directed toward this forum that have caused and continue to cause Counterclaim Plaintiffs the harms alleged herein; (c) a substantial part of the conduct giving rise to the asserted claims has occurred or has had effects in this judicial district; and (d) the properties that are the subject of this action are situated in this judicial district.

### III.    FACTS

10.    On January 18, 2019, Bostwick, 132 Wilkinson, 137 Wilkinson and Forest Street borrowed $2,650,000.00 (the "Loan") from Nexus Capital Investments, LLC ("Lender") and executed and delivered to Lender a promissory note ("Note") of even date. The Note is attached to PS Funding's Complaint as Exhibit "A" and is incorporated herein by reference.

11.    As security for the Borrower's obligations with respect to the Loan, Aytug and Stathatos executed and delivered to Lender a Guaranty dated January 18, 2019, in the original principal amount of $2,650,000.00 (the "Guaranty"). A true and correct copy of the Guaranty is attached to PS Funding's Complaint as Exhibit "B" and is incorporated herein by reference.

12.     As security for their obligations under the Note, 83 Bostwick, 132 Wilkinson, 137 Wilkinson and 286 Forest executed and delivered to Lender a first lien Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated January 18, 2019, in the original principal amount of $2,650,000.00, on the real property located at 83 Bostwick Avenue, Jersey City, NJ 07035 (Block 23501, Lot 5), 132 Wilkinson Avenue, Jersey City, NJ 07305 (Block 23501, Lot 71), 137 Wilkinson Avenue, Jersey City, NJ 07035 (Block 23502, Lot 21) and 286-288 Forest Street, Jersey City, NJ 07304 (Block 21301, Lot 32), all in the City of Jersey City, County of Hudson, New Jersey (the "Property"), which was duly recorded in the Office of the Register of Deeds of Hudson County, NJ (the "Clerk's Office") on January 24, 2019 in Mortgage Book 19319 at Page 353 et seq. as Instrument Number 20190124060009230 (the "Mortgage"). A true and correct copy of the Mortgage is attached to PS Funding's Complaint as Exhibit "C" and is incorporated herein by reference. The Mortgage was a non-purchase money mortgage.

13.     As further security for their obligations under the Note, 83 Bostwick, 132 Wilkinson, 137 Wilkinson and 286 Forest executed and delivered to Lender an Absolute Assignment of Leases and Rents dated January 18, 2019, on the real property located at 83 Bostwick Avenue, Jersey City, NJ 07035 (Block 23501, Lot 5), 132 Wilkinson Avenue, Jersey City, NJ 07305 (Block 23501, Lot 71), 137 Wilkinson Avenue, Jersey City, NJ 07035 (Block 23502, Lot 21) and 286-288 Forest Street, Jersey City, NJ 07304 (Block 21301, Lot 32), all in the City of Jersey City, County of Hudson, New Jersey (the "Properties"), which was duly recorded in the Office of the Register of Deeds of Hudson County, NJ (the "Clerk's Office") on January 24, 2019 in Mortgage Book 19319 at Page 389 et seq. as Instrument Number 20190124060009240 (the

"Assignment of Leases"). A true and correct copy of the Assignment of Leases is attached to PS Funding's Complaint as Exhibit "D" and is incorporated herein by reference. Exhibits "A", "B", "C" and "D" shall be collectively referred to as the "Loan Documents."

14. Upon information and belief, or about January 18, 2019, Lender assigned all of its right, title and interest in and to the Mortgage and Loan Documents to PS Funding, Inc. by Assignment of Mortgage which was recorded at the Office of the Register of Deeds in and for the County of Hudson on April 3, 2019 in Assignment of Mortgage Book 1247 at Page 400 et seq. as Instrument Number 20190403020011840 (the "Assignment") A true and correct copy of the Assignment is attached to Defendant's Complaint as Exhibit "E" and is incorporated herein by reference. Upon information and belief, Lender also executed an Allonge assigning all of its right, title and interest in and to the Note to PS Funding (the "First Allonge"). Upon information and belief, a true and correct copy of the Allonge is attached Defendant's Complaint as Exhibit "F" and is incorporated herein by reference.

15. PS offered to Counterclaim Plaintiffs a "Loan Modification Agreement" with PS Funding (the "Modification").

16. In or about March 2020, Counterclaim Plaintiffs entered into the Modification with PS. A true and correct copy of the Modification is attached to PS Funding's Complaint Exhibit "G" and is incorporated herein by reference.

17. On April 19 or 20, 2021 Counterclaim Plaintiffs discussed their future obligations under the Loan Documents and Modification with Tom Danehey, Head of Asset Management for PS Funding. During settlement negotiations, and as consideration for delivery of

monies required for settlement, Mr. Danehey twice assured Counterclaim Plaintiffs that PS Funding was "not going to put you in foreclosure."

18.     Consistent with Mr. Danehey's commitment, the Mortgage Security Agreement in the Loan Documents, paragraph 10.2 provides that PS may "extend the time for any payments" and "discharge any person for any obligations" under the Loan for any reason.  Mr. Danehey's representation to Counterclaim Plaintiffs that PS Funding will "not put you into foreclosure" was PS Funding's election under paragraph 10.2 to release Counterclaim Plaintiffs from any potential foreclosure action.

19.     PS Funding made its elective representation and commitment in the course of settlement negotiations, during which it offered and Counterclaim Plaintiffs accepted PS Funding's offer to not proceed with foreclosure in consideration of payment by Counterclaim Plaintiffs of  only the principal and a portion of the accrued non-penalty interest of the Loan.

20.     In reasonable reliance on PS Funding's settlement agreement, including its commitment to not foreclose, Counterclaim Plaintiffs sought out alternative lenders and buyers to take out the PS Funding Loan.

21.     In further reliance on the parties' settlement agreement, Counterclaim Plaintiffs took other costly actions that they would not have taken in the absence of the settlement agreement including, but not limited to, continuing to improve the Properties, paying for upkeep and maintenance of the properties, and maintaining relations with tenants and property managers.

22.     In further reliance on the parties' settlement agreement, Counterclaim Plaintiffs did not exercise other rights available to them that they would have taken in the absence of the

settlement agreement including, but not limited to, immediately selling the properties to third parties.

23.

24. Despite the parties' settlement agreement, including PS's election and agreement that it would not foreclose, on June 24, 2021 PS Funding filed a foreclosure action in the Superior Court of New Jersey, Chancery Division, Hudson County seeking, among other relief, to foreclose but did not notify the Counterclaim Plaintiffs of the filing.

25. PS Funding's decision to file the foreclosure action while simultaneously concealing that filing from Counterclaim Plaintiffs and continuing to induce Counterclaim Plaintiffs to believe that PS Funding would honor its settlement agreement with Counterclaim Plaintiffs was a fraudulent scheme designed to either extort funds from Counterclaim Plaintiffs that far exceeded the amounts PS Funding would receive under the settlement agreement or to take ownership of the Properties through foreclosure.

26. An important part of PS Funding's fraudulent scheme was the filing of the foreclosure action which it planned to use as leverage to extort additional funds from Counterclaim Plaintiffs once maximum pressure was on them or to take possession of the Properties.

27. On July 19, 2021 and unaware of PS Funding's filing of the foreclosure action, Counterclaim Plaintiffs advised PS Funding that they had "solid offers" on the Properties and expected to be able to soon repay the Loan based on the terms of the settlement agreement.

28. Consistent with its commitments to Counterclaim Plaintiffs and still without disclosing it had filed its foreclosure action, on July 29 and August 3, 2021, PS Funding represented

to Counterclaim Plaintiffs it was "waiting for the payoff information" before proceeding to "confirm the terms of the extension" of the payoff it had agreed to accept.

29.     At the request of PS Funding and in reliance on the settlement agreement, Counterclaim Plaintiffs provided PS Funding with "HUD" statements outlining a loan and sales they had arranged to close with alternative lenders/buyers on August 20 and August 28, 2021 in order to provide the settlement funds.

30.     In accordance with its fraudulent scheme, once PS Funding understood that Counterclaim Plaintiffs had been able to make contractual arrangements with alternative lenders to take out the PS Funding loan at commercially reasonable terms and knew the specific amount of money raised by Counterclaim Plaintiffs, PS Funding breached the settlement agreement by not proceeding to accept the funds raised by Counterclaim Plaintiffs in order to extort additional sums, over and above the amounts agreed upon, from the Counterclaim Plaintiffs.

31.     PS Funding continued to hold the already filed foreclosure complaint in secret, concealing it from Counterclaim Plaintiffs as it worked to scuttle the settlement agreement.

32.     Once Counterclaim Plaintiffs presented PS Funding with HUD statements for the sales and loan that would satisfy the settlement agreement, PS Funding refused to issue a payoff letter that would have permitted both the sale and loan to close consistent with the terms of the settlement.  Instead, PS Funding proceeded with its foreclosure action.

33.     As a result of PS Fundings' reversal of position, Counterclaim Plaintiffs lost the opportunity to borrow money from alternative lenders under reasonable commercial

terms.  The loss of that opportunity and other actions taken by Counterclaim Plaintiffs in reliance on the settlement agreement damaged Counterclaim Plaintiffs.

34.     PS Funding reversed its position with Counterclaim Plaintiffs for the improper purpose of using the foreclosure action it agreed to not pursue in order to leverage collection from Counterclaim Plaintiffs of funds, penalties and interest that is commercially unreasonable and well in excess of the settlement agreement and/or take possession of the Properties.

## IV.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Breach of Contract – Failure to Honor Its Agreements To Not Foreclose And
Resolve The Loans Under Commercially Reasonable Terms)

35.     Counterclaim Plaintiffs incorporate the allegations and averments of paragraphs 1 through 34 above as though fully set forth in this paragraph.

36.     Counterclaim Defendant PS Funding through one or more of its agents and/or employees agreed pursuant to and in consideration of the Mortgage Security Agreement, paragraph 10.2, and the other associated Loan Documents to not foreclose on the Properties.

37.     In light of and having agreed to not foreclose and in consideration of the Mortgage Security Agreement and the other associated Loan Documents, Counterclaim Defendant PS Funding through one or more of its agents and/or employees also agreed to resolve the Loan with Counterclaim Plaintiffs pursuant to the settlement agreement.

38.     By pursuing its foreclosure Complaint against Counterclaim Plaintiffs and the other Defendants and seeking the relief it asserts in this action for penalties, unreasonable interest and other punitive charges when Counterclaim Plaintiffs were ready willing and able to pay off the Loan in accordance with the settlement agreement at commercially reasonable terms, PS breached its contracts with Counterclaim Plaintiffs.

39.  As a direct and proximate result of the PS's breaches of its contracts with Counterclaim Plaintiffs, Counterclaim Plaintiffs have suffered and will continue to suffer, damages in an amount to be proved at trial.

## SECOND CLAIM FOR RELIEF
(Fraudulent Inducement and Misrepresentation)

40.  Counterclaim Plaintiffs incorporate the allegations and averments of paragraphs 1 through 39 above as though fully set forth in this paragraph.

41.  Counterclaim Plaintiffs were fraudulently induced to rely on PS Fundings' commitment that it would not foreclose and to allow them to resolve the Loan under commercially reasonable terms pursuant to the settlement agreement based on and in reliance on the false statements and representations of PS Funding.

42.  As part of its fraudulent scheme, a false statement of PS Funding was made by Tom Danehy, Head of Asset Management for PS Funding, on April 19 or 20, 2021 when he told Peter Aytug in a telephone call that PS Funding was "not going to put you into foreclosure."

43.  A series of  follow on false statements were made by PS Funding to induce Counterclaim Plaintiffs to rely on PS Funding's settlement agreement while PS Funding secretly proceeded to file its foreclosure action in order to create leverage over Counterclaim Plaintiffs when:

   a.  On July 19, 2021 Matthew Dameron, a Senior Director of Asset Management, for PS Funding sent an email to Peter Aytug agreeing to speak about the loans in order to induce Counterclaim Plaintiffs to believe that PS Funding would comply with the settlement agreement;

b.    On July 29, 2021 Matthew Dameron sent an email to Peter Aytug stating that he was waiting for payoff information when PS Funding had no intention of accepting a payoff in accordance with the settlement agreement;

c.    On August 3, 2021 when Matthew Dameron sent an email to Peter Aytug stating "As I previously discussed, I'm waiting on the updated payoff to be returned so that we (that being you and myself) can discuss and confirm the terms of the extension" when PS Funding had no intention of consummating the already agreed upon settlement.

44.    PS Funding intentionally or recklessly misrepresented existing facts concerning its true position on foreclosure and the settlement agreement.

45.    The misrepresentations affected the essence of Counterclaim Plaintiffs' ability to resolve the Loan transaction between PS Funding and Counterclaim Plaintiffs and the settlement agreement.

46.    Counterclaim Plaintiffs arranged for alternative financing and took other actions to their detriment as alleged above based on and in reliance on the above false statements and misrepresentations of PS Funding.

47.    The misrepresentations were false at the time they were made and PS Funding knew them to be false.

48.    The misrepresentations were not open to Counterclaim Plaintiffs' knowledge.

49.    The misrepresentations were material in that PS Funding is pursuing the foreclosure action it committed to not pursue and PS Funding has refused to resolve the Loan pursuant to the settlement agreement.

50.     Counterclaim Plaintiffs reasonably believed and relied on the misrepresentations to their detriment.

51.     As a result of Counterclaim Plaintiffs' reliance on the intentional misrepresentations of PS Funding, Counterclaim Plaintiffs have suffered and will suffer irreparable, direct, and consequential harm and therefore are entitled to damages.

52.     The misrepresentations are the direct and proximate cause of Counterclaim Plaintiffs' damages, including its defense costs and attorney's fees to defend against this foreclosure action.

**THIRD CLAIM FOR RELIEF**
(Tortious Interference with Business Relations and Prospective Economic Advantage)

53.     Counterclaim Plaintiffs incorporate the allegations and averments of paragraphs 1 through 52 above as though fully set forth in this paragraph.

54.     At all relevant times, Counterclaim Plaintiffs have enjoyed beneficial relationships with the tenants of the Properties and have gained and stood to gain economic advantage from said relationships.

55.     At all relevant times, Counterclaim Plaintiffs have enjoyed beneficial relationships with KP Realty Holdings LLC who agreed to loan Counterclaim Plaintiffs a net of $1,371,473.44 and JN Equity LLC who agreed to purchase 132 and 137 Wilkinson Avenue for a net of $1,375,000 under commercially reasonable terms to be used by Counterclaim Plaintiffs to fund the settlement with PS Funding.

56.     Counterclaim Plaintiffs Aytug and Stathatos hold ownership interests with Flerida Johnas Santana in properties located in New York State at 852-854 Madison Ave., New York,

New York; 487-491 Yates St, Albany, New York and 166 Washington Ave, Albany, New York (the "New York Properties").

57.     PS Funding loaned money to the owners and guarantors of the New York Properties, including Aytug, Stathatos and Ms. Santana in consideration of notes and mortgages (the "New York Loans").

58.     On information and belief, PS Funding sold all or part of its loans on the New York Properties to an institutional investor.

59.     PS Funding claims that the New York Loans are in default.

60.     Over the time period from April, 2021 to present, Aytug and Stathatos have endeavored to resolve the alleged New York Loan defaults with PS Funding by securing a loan extension on behalf of themselves and Ms. Santana.

61.     On or about August 10, 2021 and thereafter, PS Funding took the position that the ability of Aytug and Stathatos to obtain an extension on the alleged New York Loan defaults was contingent and dependent on the resolution of the PS Funding claims against the New Jersey Properties.

62.     There is no cross-collateralization agreement between the New York Loans and Properties and the New Jersey Loans and Properties.

63.     PS Funding has refused to proceed with a loan extension on the New York Loans because it claims that Counterclaim Plaintiffs are in default on the New Jersey Loans.

64.     At all relevant times, Counterclaim Plaintiffs Aytug and Stathatos have enjoyed a beneficial relationship with Ms. Santana who is a joint owner with them and with whom they all borrowed money from and/or guaranteed loans to PS Funding on the New York

Properties, and have gained and stood to gain economic advantage from said relationship.

65.   At all relevant times, PS Funding has been aware of Counterclaim Plaintiffs' business relationships with the tenants of the New Jersey Properties and the alternative lenders/buyers for the New Jersey Properties.

66.   At all relevant times, PS Funding has been aware of Counterclaim Plaintiffs Aytug and Stathatos business relationships with Ms. Santana with whom they borrowed money from and/or guaranteed loans to PS Funding on the New York Properties

67.   With knowledge of Counterclaim Plaintiff's business relationships, PS Funding has intentionally, tortiously, and unjustifiably interfered with said relationships as set forth above including, but not limited to, wrongfully bringing the tenants of the New Jersey Properties into this litigation as "Doe" Defendants after committing to not foreclose, by refusing to proceed with the settlement agreement on the New Jersey Loans and refusing to proceed with an extension of the New York Loans until and conditioned upon resolution of the New Jersey Loans.

68.   Counterclaim Plaintiffs have no adequate remedy at law to compel PS Funding to cease its wrongful acts and will continue to suffer irreparable harm if PS Funding's actions are not enjoined.  Counterclaim Plaintiff's damages are irreparable because it is extremely difficult to ascertain the amount of compensation that would afford Counterclaim Plaintiffs adequate relief if PS Funding is not enjoined at this time.

69.   In light of the foregoing, Counterclaim Plaintiffs are entitled to injunctive relief in the form of a preliminary injunction and/or a permanent injunction prohibiting PS Funding from tortiously interfering with Counterclaim Plaintiff's business relations and

prospective economic advantage with its New Jersey Property tenants and alternative lenders/buyers and Ms. Santana.

70.     In light of the foregoing, Counterclaim Plaintiffs are entitled to recover from PS Funding all damages that Counterclaim Plaintiffs have sustained and will sustain as a result of PS Funding's unlawful conduct and all gains, profits and advantages obtained by PS Funding as a result thereof.

71.     The exceptional circumstances of this case involving PS Funding's intentional, malicious, willful, wanton, and unlawful conduct, as well as PS Funding's reckless indifference to Counterclaim Plaintiff's rights, entitle Counterclaim Plaintiffs to an award of punitive damages.

**FOURTH CLAIM FOR RELIEF**
(Unfair and Deceptive Trade Practices Under New Jersey's Consumer Fraud Act, NJS 56:8-19)

72.     Counterclaim Plaintiffs incorporate the allegations and averments of paragraphs 1 through 71 above as though fully set forth in this paragraph.

73.     PS Fundings' reversals of position on its commitment to not foreclose and to resolve the New Jersey Loan pursuant to the settlement agreement were unfair and deceptive acts or practice under New Jersey's Consumer Fraud Act, NJS 56:8-19.

74.     PS Fundings' linking of the resolution of the New Jersey Loan with the extension of the New York Loan was an unfair and deceptive act or practice under New Jersey's Consumer Fraud Act, NJS 56:8-19.

75.     Counterclaim Plaintiffs sustained damages as a result of PS's unfair and deceptive practices prohibited by NJS 56:8-19.

76.     The effects of PS Funding's unfair and deceptive practices were material.

77.     Counterclaim Plaintiffs sustained damages as a direct result of PS Funding's unfair, and

deceptive actions and as a result are entitled to all remedies set forth in the New Jersey

Consumer Fraud Act, including attorneys' fees and exemplary damages in the amount of

treble compensatory damages.

### V.     <u>PRAYER FOR RELIEF</u>

78.     Counterclaim Plaintiffs pray for entry of judgment in its favor and against PS Funding as

follows:

a.      An award to Counterclaim Plaintiffs of all statutory damages, compensatory

damages, punitive damages, and restitution to which it is entitled, in an amount

to be proven at trial, caused by PS Funding's:

i.      Breach Of Contract;

ii.     Fraudulent Inducement;

iii.    Fraudulent Misrepresentation;

iv.     Tortious Interference With Business Relations And Prospective

Economic Advantage; and

v.      Violation Of New Jersey's Consumer Fraud Act;

b.      Dismissal of the foreclosure action;

c.      A preliminary injunction and/or a permanent injunction prohibiting PS Funding

from tortiously interfering with Counterclaim Plaintiffs' business relations and

prospective economic advantage with the tenants of its Properties and its alternative

lenders; and

d.      An award to Counterclaim Plaintiffs of its attorneys' fees and all such other and further relief as the Court shall deem just.

*/s/ Joshua W. Denbeaux*

Joshua W. Denbeaux, Esq.
**Denbeaux & Denbeaux**
372 Kinderkamack Road
Suite 5
Westwood, NJ  07675
(201) 664-8855
(201) 666-8589 (fax)

R. Bradford Fawley, Esq. (*pro hac vice application to be filed*)
**FAWLEY PLLC**
680 E. Main Street #596
Stamford, Connecticut  06901
(802) 380-4735 (phone)

*Attorneys for Defendants and Counterclaim Plaintiffs Peter Aytug, Areopi Stathatos, 83 Bostwick LLC, 132 Wilkinson Avenue LLC, 137 Wilkinson Avenue LLC and 286-288 Forest Street LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 6, 2021 I filed the foregoing document with the Court via CM/ECF, which will automatically deliver electronic copies of the same to all counsel of record and mailed copies via First Class Mail, postage prepaid to Chartwell Law, John J. Winter, Esquire and Robert J. Murtaugh, Esquire, 970 Rittenhouse Road, Suite 300, Eagleville, PA 19403.

*/s/ Joshua W. Denbeaux*